IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANA LEIGH BARTON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>FRANK J. TOMECEK, JR., M.D., FRANK J. )<br>TOMECEK, M.D., PLC, an Oklahoma Limited )<br>Liability Company Professional; OKLAHOMA )<br>SPINE & BRAIN INSTITUTE, LLP, an Oklahoma )<br>Limited Liability Partnership; TULSA SPINE & )<br>SPECIALTY HOSPITAL, LLC, an Oklahoma )<br>Limited Liability Company; BIOMET, INC., an )<br>Indiana Corporation; BIOMET SPINE, LLC, an )<br>Indiana Limited Liability Company; BIOMET )<br>SPINE, LLC, an Oklahoma Foreign Limited )<br>Liability Company; and EBI, LLC, a New Jersey )<br>Limited Liability Corporation; )<br>)<br>Defendants. ) | Case No. 11-CV-619-CVE-TLW |

## OPINION AND ORDER

Before the Court is the Motion for Protective Order of Defendant Tulsa Spine & Specialty Hospital, LLC ("the Hospital"). (Dkt. # 50).[1] Through its motion, the Hospital seeks to limit the scope of a subpoena served by plaintiff on Stillwater National Bank. Plaintiff's subpoena seeks a number of the Hospital's financial documents, including financial statements and K1 schedules, for the period dating from the Hospital's inception in 1999 to the present. (Dkt. # 50, Ex. 1). After conferring, the parties reached a partial resolution of their dispute, pursuant to which the hospital withdrew its objection with regard to a limited time period beginning in 2008. The Hospital continues to object to the production of the requested information for any other years, and plaintiff continues to assert that she is entitled to obtain all of the requested information. (Dkt. # 50).

---

[1] Plaintiff's response is at (dkt. # 53), and the Hospital's reply is at (dkt. # 54).

1

During a hearing on May 31, 2012, the Court directed plaintiff to review the information which the Hospital had agreed could be produced and file a supplemental brief re-urging her motion, if she believed a direct connection could be established between plaintiff's claims and the requested financial information. (Dkt. # 55). Plaintiff subsequently filed her supplemental briefing, as did the Hospital, and the Court held a second hearing on June 19, 2012. (Dkt. ## 57, 59, 61).

**Background Information**

According to the allegations in the Complaint, plaintiff suffered a back injury in 2009. (Dkt. # 2, ¶ 14). After a conservative treatment plan failed to eliminate her pain, plaintiff's physicians referred her to defendant Tomecek. (Dkt. # 2, ¶ 14). In October 2009, Tomecek performed a complex spinal surgery on plaintiff at the Hospital, a physician-owned facility in which Tomecek maintains an ownership interest. (Dkt. # 2, ¶ 16). The surgery was not successful, and plaintiff suffered complications that eventually led to a second surgery to remove hardware placed in plaintiff's back during the initial surgery. (Dkt. # 2, ¶¶ 22-25). Even with the corrective surgery, plaintiff still suffers chronic pain and can no longer work. (Dkt. # 2, ¶ 26).

Plaintiff alleges that the initial surgery Tomecek performed was both negligently performed and unnecessary. (Dkt. # 2, ¶ 21). Plaintiff contends that both Tomecek and the Hospital had financial incentives to perform unnecessary surgery on plaintiff and other patients, based in part on a research study that showed an increase in complex spinal surgeries by Tomecek once he began operating at the Hospital, rather than at a facility in which he had no ownership interest. (Dkt. # 2, ¶¶ 29-39). Plaintiff contends that these financial motivations led Tomecek and the Hospital to persuade her to undergo the "unnecessary" surgery. (Dkt. # 2, ¶¶

32-36). Based on these allegations, plaintiff asserts claims of fraud and civil conspiracy, in addition to various negligence-based claims. (Dkt. # 2, ¶¶ 86-94, 95-100).

## The Parties' Positions

The Hospital argues that plaintiff's subpoena exceeds the legitimate scope of discovery under Fed. R. Civ. P. 26, thus warranting a limitation on the scope of the subpoena or a protective order. (Dkt. # 50 at 4-5). The Hospital also argues that plaintiff's theory of the case – that the Hospital engaged in a conspiracy to commit fraud by allowing Tomecek to perform unnecessary surgeries for financial gain – has already been disproven through the discovery process, particularly through plaintiff's own deposition testimony. Id. at 7. The latter argument addresses the merits of plaintiff's claims rather than the appropriateness of the subpoena for discovery purposes; thus, it is not considered here.

Plaintiff argues that the broad definition of relevance for purposes of conducting discovery requires production of the financial statements and the K1 schedules. (Dkt. # 53 at 3-4). Plaintiff contends that production of these documents is "relevant to the claims asserted" and "reasonably calculated to lead to the discovery of admissible evidence," because plaintiff "anticipates the subpoenaed documents will illuminate a pattern of wrongful referrals and billing practices by Defendants, as well as demonstrate the expectation of profit held by Dr. Tomecek and [the Hospital] in regard to surgeries similar to [plaintiff's surgery]." (Dkt. # 53 at 3-4). In her supplemental briefing, plaintiff cites the research of one of her experts, Dr. Jean Mitchell, Ph.D., who concluded that there was an increase in the number of complex surgeries performed by doctors with an ownership interest in the Hospital as compared to the number of similar surgeries performed by the same doctors prior to the Hospital's founding. (Dkt. # 57 at 4). Dr. Mitchell concluded that the odds of receiving complex spinal surgery increased "after physicians acquired

a financial stake in the specialty hospital." (Dkt. # 57 at 4, Ex. B). Plaintiff essentially contends that Dr. Mitchell's research establishes that the Hospital was motivated by financial gain to perform plaintiff's surgery and argues that the financial statements and the K1 schedules are necessary in order for a second expert, Dr. Ronald T. Luke, J.D., Ph.D., to quantify that financial gain. (Dkt. # 57 at 4-6).

Plaintiff more specifically argues that the requested information is relevant to her claim of civil conspiracy. Plaintiff has advanced the theory that Tomecek, the Hospital, and the other founding physicians entered into a conspiracy at the time the Hospital was formed in 1999 to recommend and perform surgeries for pecuniary gain rather than because the surgeries were medically necessary. (Dkt. # 57 at 6). Plaintiff argues that the documents sought are relevant because they will quantify the Hospital's incentive, which plaintiff contends is established through Dr. Mitchell's findings that "physician ownership creates a conflict of interest which has the potential of influencing physician behavior" and that the Hospital's surgeons performed a higher number of complex surgeries once the physicians invested in the Hospital. (Dkt. # 57 at 6, Ex. B).

At the June 19 hearing, the Court asked plaintiff's counsel whether the relevance of the requested documents rested on a finding that the additional surgeries being performed were unnecessary, and plaintiff argued that whether or not any particular surgery was necessary or unnecessary, the incentive for pecuniary gain still existed; therefore, the documents were relevant. (Dkt. # 61, Hearing recording dated June 19, 2012, Joel A. LaCourse). Plaintiff argued that the documents were necessary to establish the "cumulative effect" of performing an increased number of complex surgeries so that plaintiff could articulate the financial impact of those surgeries over the years to a jury. Id.

4

**Analysis**

**The Hospital's Standing to Object to the Third-Party Subpoena**

The Court first considers whether the Hospital has standing to file the pending motion.[2] See Public Service Co. of Oklahoma v. A Plus, Inc., 2011 WL 691024, *2 (W.D.Okla. February 16, 2011) (unpublished).[3] Generally, a party does not have standing to challenge a subpoena issued to a third party, absent some personal or proprietary interest or privilege in the materials subpoenaed. See Howard v. Segway, Inc., 2012 WL 2923230, *2 (N.D.Okla. July 18, 2012) (unpublished) (citations omitted). See also 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (3d ed. 2008). The privacy interest in preventing intrusion into personal financial affairs is sufficient to satisfy the standing requirement. See A Plus, Inc., 2011 WL 691204 at *3 (citations omitted). Because the Hospital seeks a protective order preventing disclosure of its financial records, the Hospital has stated a sufficient privacy interest and has standing to challenge the third-party subpoena.

**The Subpoenas**

Challenges to third-party subpoenas are governed by Federal Rule of Civil Procedure 26. See Rendon Group, Inc. v. Rigsby, 268 F.R.D. 124, 126 (D.D.C. 2010) (holding that "Rule 26 of the Federal Rules of Civil Procedure defines and governs the scope of discovery for all discovery devices, and, therefore, Rule 45 must be read in light of it.") (citing 9A Charles Alan Wright & Arthur A. Miller, Federal Practice and Procedure § 2452 at 392-93 (3d ed. 2008)); Shirazi v. Childtime Learning Center, Inc., 2008 WL 4792694 (W.D.Okla. October 31, 2008) (unpublished) (analyzing a motion to quash third-party subpoenas within the context of Rule

---

[2] Plaintiff does not object to the Motion for Protective Order on the basis of standing.

[3] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

26(b)(1)). In this case, the Hospital asserts that its financial statements and K1 schedules are outside the scope of discovery, because they are not relevant to plaintiff's claims, specifically plaintiff's claim that Dr. Tomecek and the Hospital engaged in a conspiracy to perform an unnecessary surgery on plaintiff. (Dkt. # 50 at 4-5). Plaintiff, on the other hand, argues that the documents will show, in part, "a pattern of wrongful referrals and billing practices." (Dkt. # 53 at 3-4).

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery to include:

> [A]ny nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The Tenth Circuit has explained that the rule implements a "two-tiered discovery process." In re Cooper Tire & Rubber Co., 568 F.3d 1180, 1188-89 (10th Cir. 2009). The first tier of discovery is "attorney-managed discovery of information relevant to any claim or defense of a party." Id. at 1188 (citations omitted). The second tier requires court intervention and "can include information relevant to the subject matter of the action." Id. (citations omitted). "Accordingly, if a party objects that discovery goes beyond what is relevant to the claims or defenses, 'the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.'" Id. at 1188-89 (citing Fed. R. Civ. P. 26 advisory committee's note (2000)).

The term "relevant" is intended to be defined broadly in the context of the discovery process because "discovery itself is designed to help define and clarify the issues." International Bhd. Of Teamsters, Airline Div. v. Frontier Airlines, Inc., 2012 WL 1801979, *3 (D.Colo. May

16, 2012) (unpublished). A request for discovery is relevant "if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." Cardenas v. Dorel Juvenile Grp., Inc., 232 F.R.D. 377, 382 (D.Kan. 2005) (citations omitted). Which party bears the burden of proving relevance in the discovery context depends upon whether the relevance of the discovery sought is "readily apparent." Id. If the relevance of the request is readily apparent, the burden of proof lies with the party challenging the discovery. See id. "Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." Id. (citing Hammond v. Lowe's Home Ctrs., Inc., 216 F.R.D. 666, 670 (D.Kan. 2003)). See also E.E.O.C. v. Original Honeybaked Ham Co. of Georgia, Inc., 2012 WL 934312, *3 (D. Colo. March 19, 2012) (unpublished) ("When the requested information appears to be relevant, the party objecting to the discovery has the burden to establish the information is irrelevant . . . or is of such marginal relevance that the harm in producing the information outweighs the presumption in favor of broad disclosure.").

The civil conspiracy count alleges that the Hospital conspired with the other defendants "to defraud Plaintiff and breach their fiduciary duty to her by performing unnecessary surgery . . . ." (Dkt. # 2, ¶ 96). Plaintiff contends that these documents will establish "a pattern of wrongful referrals and billing practices" when combined with the findings of an expert that complex surgeries increased among the physician owners of the Hospital after the Hospital was founded. (Dkt. # 53 at 3). The financial statements and the K1 schedules presumably contain information that would allow plaintiff's expert to determine the amount of money defendants have made since 1999, the value of the various defendant entities through time, the value of Tomecek's (and the other physician owners) interest in these entities over time, and the expenses, overhead, and

7

revenues of defendants. However, plaintiff has not alleged that the financial information she seeks (and for 2008-09 that she already has) actually contains "referral" information or "billing" information. Rather, plaintiff only alleges that the documents ". . . will illuminate a pattern of wrongful referrals and billing practices by Defendants" and will establish the financial gain of defendants that resulted from performing an increased number of complex back surgeries. (Dkt. # 53 at 3-4). In other words, plaintiff seeks the financial information for the purpose of establishing the reason for an alleged pattern or practice and for the purpose of establishing the financial gain resulting from that pattern or practice. But, plaintiff's lawsuit does not rise or fall on the fact that defendants were engaging in a "pattern or practice" of conducting unnecessary surgeries. Rather, plaintiff's lawsuit, at least insofar as the pending motion is concerned, turns on whether or not her back surgery was unnecessary and, if so, whether it was the result of a conspiracy.[4]

For example, plaintiff's Complaint alleges only that the Hospital conspired with the other defendants to defraud her. Yet, plaintiff has made no credible argument that the broad array of financial information she seeks is probative of whether or not her surgery was necessary. See Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). (Dkt. # 2 at ¶¶ 95-100). The Complaint does not allege claims on behalf of other patients who underwent complex surgeries, and, in fact, plaintiff has already been provided the requested information for the time period during which she was a patient. Put simply, plaintiff has not explained how the requested information is relevant to prove that defendants conspired to defraud her or to convince her to undergo an unnecessary surgery, other than arguing that the

---

[4] Plaintiff also alleges that her back surgery was negligently performed, but she does not allege that the financial documents are relevant to that issue.

information will establish some generalized "profit" motive over time. The existence of such a motive alone is not enough to establish the relevance of the broad range of discovery sought by plaintiff here.

Additionally, it remains unclear how the financial statements and K1 schedules are relevant when the individual elements of plaintiff's civil conspiracy claim are considered. A civil conspiracy requires (1) two or more persons; (2) an objective to be accomplished; (3) a meeting of the minds on the objective or course of action to be taken; (4) one or more overt, unlawful acts; and (5) damages. See Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 175 (Okla. 2008). Again, plaintiff has only alleged a civil conspiracy with the objective of convincing her to have an unnecessary surgery for the purpose of achieving financial gain, and the Hospital does not object to the production of the information as it relates to plaintiff's surgery. Any additional financial information would relate only to surgeries not at issue in this case.

For the foregoing reasons, the Court finds that the relevance of plaintiff's discovery requests is not readily apparent and that plaintiff has failed to meet her burden of establishing such relevance.

Of course, relevance to a claim or defense is not the only path to the discovery sought by plaintiff. For good cause shown, plaintiff may obtain the discovery she seeks if the information sought is relevant to the subject matter of the action. Fed. R. Civ. P. 26. It is under this prong of the two-tiered analysis that the Court will consider plaintiff's "profit motive" argument.[5] Plaintiff specifically argues that the documents will show the "cumulative effect" of the financial impact of the unnecessary surgeries performed when compared to the procedures that should have been

---

[5] The Court will assume, without deciding, that the information sought is relevant to the subject matter of this action.

performed. (Dkt. # 61, Hearing recording dated June 19, 2012, Joel A. LaCourse). In this regard, plaintiff argues that the information will reveal the defendants' plan to perform unnecessary surgeries for financial gain from the beginning of the Hospital's existence. Id.

First, there is certainly no dispute that the Hospital is a for-profit entity that seeks to make money through the provision of services, including surgical services. But, there is also no dispute that a profit motive is present with almost all surgical procedures, irrespective of who owns the medical facility where the procedure is performed. Plaintiff's argument is only one of degree. Therefore, the existence of a profit motive alone does not establish good cause.

Second, plaintiff's argument rests on an unfounded premise that all of the "increase in surgeries" cited in Dr. Mitchell's research were unnecessary and were motivated by the increased profit potential arising from the fact that the Hospital is physician owned. This premise may be true, but plaintiff has presented no independent basis to support such a theory (e.g., an internal email encouraging doctors to perform more complex back surgeries). See, e.g., In re Cooper Tire & Rubber Co., 568 F.3d 1180, 1193) (10th Cir. 2009) (holding that "the mere fact that a plaintiff entertains a 'broad theory of the case' does not justify more expansive discovery, unless the discovery is relevant to the plaintiff's actual claims or defenses, or the plaintiff makes a showing of good cause."). Moreover, the information sought by plaintiff will not reveal which surgeries were unnecessary, nor will it lead plaintiff to other relevant evidence. In order for plaintiff to prove that each of the "increased surgeries" was unnecessary, she would need to examine the medical records of each patient who underwent a complex surgery at the Hospital. Obtaining those records would certainly be outside the scope of plaintiff's Complaint, which alleges only that her surgery was unnecessary and was the product of a conspiracy.

Third, even if it could be shown that the increase in the number of complex surgeries resulted solely from unnecessary surgeries, such a showing would not tend to establish that plaintiff's surgery was among the subset of "increased surgeries" that were motivated by the Hospital's (or its physician owners') desire for pecuniary gain.

Finally, if the Court were to presume that plaintiff's surgery was unnecessary and that all or most of the "increased surgeries" were unnecessary, the information sought still has little connection to <u>this</u> case, since it does not relate to plaintiff's back surgery and will not lead to evidence that does relate to plaintiff's back surgery. As discussed <u>supra</u>, the Hospital has withdrawn its objection to the production of its financial information for the time period during which plaintiff was a patient of the Hospital. For each of these reasons, the Court finds that plaintiff has failed to show good cause for obtaining the requested information.

## CONCLUSION

As set forth above, plaintiff has failed to establish the relevance of the financial statements and K1 schedules that are requested in the subpoena and that remain at issue. Plaintiff has, likewise, failed to establish good cause. Because the requested documents are not relevant, they are not discoverable under Federal Rule of Civil Procedure 26(b)(1). Thus, the Hospital's motion for protective order is GRANTED. (Dkt. # 50). Plaintiff shall have access to the 2008-2009 financial statements and K1 schedules pursuant to the parties' previous agreement, but plaintiff may not access any additional documents requested in the subpoena to Stillwater National Bank and Trust Company absent further order of this Court.

SO ORDERED this the 28th day of August, 2012.

_____
T. Lane Wilson
United States Magistrate Judge