**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DANA LEIGH BARTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 11-CV-619-JED-TLW |
| v. ) | |
| ) | |
| FRANK J. TOMECEK, JR., M.D.; ) | |
| FRANK J. TOMECEK, M.D., P.L.C.; ) | |
| and OKLAHOMA SPINE AND BRAIN ) | |
| INSTITUTE, L.L.P.; ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

The Court has for its consideration the Motion for Summary Judgment filed by the defendants (Doc. 95), plaintiff's Response (Doc. 103), and defendant's Reply (Doc. 128). The Motion is for *partial* summary judgment, as defendants do *not* seek summary judgment on plaintiff's claims for breach of the standard of care (negligence) or vicarious liability.

**I.    Background**

After slipping and falling on ice, plaintiff, Dana Leigh Barton, suffered back pain and was referred to defendant Frank J. Tomecek, Jr., M.D., who is a spinal specialist. Dr. Tomecek performed complex spinal surgery on Ms. Barton. She alleges in this suit that the surgery was completely unnecessary and/or negligently performed, leaving her with flat back syndrome and rendering her disabled and deformed. Ms. Barton's initial Complaint included claims against these defendants for breach of fiduciary duty, fraud, and civil conspiracy.

Following the dismissal of other defendants from this case, Ms. Barton sought and was granted leave to amend her Complaint to reflect the current status of her claims. Through the Amended Complaint, Ms. Barton now asserts claims for negligence (including gross negligence)

(First Claim), vicarious liability of defendants Oklahoma Spine & Brain Institute, L.L.P. and Frank J. Tomecek, M.D., P.L.C. for the actions of Dr. Tomecek (Second Claim), Res Ipsa Loquitur (Third Claim), and a failure to obtain informed consent (Fourth Claim). The Amended Complaint does *not* contain claims for breach of fiduciary duty, fraud, or civil conspiracy, which were asserted in the initial Complaint.

## II.     Standards Governing Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "By its terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "[S]ummary judgment will not lie if the dispute about a material fact is not 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255.

The summary judgment procedure is "not . . . a disfavored procedural shortcut, but rather [is] an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327. When the moving party has carried its burden, its "opponent must do more than simply show that there is

some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III.     Discussion

####     A.     *Breach of Fiduciary Duty, Fraud, and Civil Conspiracy*

Because Ms. Barton's Amended Complaint eliminated her earlier claims for fiduciary duty, fraud, and civil conspiracy, the Court finds that, on those particular claims, the motion is moot, as those claims are no longer presented as a part of this case.

####     B.     *Res Ipsa Loquitur*

Defendants argue that Ms. Barton's claim for res ipsa loquitur should be dismissed. Their argument is based upon a statement in the Opinion and Order of the Honorable Claire V. Eagan (who presided over this case until the case was reassigned) that "'res ipsa loquitur' is not a claim for relief but, rather, a method of establishing breach of duty in a negligence claim." (Doc. 72 at 2, n.1). In her Response, Ms. Barton "acknowledges that the [res ipsa loquitur] doctrine is not a stand-alone negligence claim," but argues that she should be able to present the issue of res ipsa loquitur to the jury in this case. (Doc. 103 at 5). In support of her allegations of res ipsa loquitur as an evidentiary doctrine, she cites an Oklahoma statute, which provides:

> In any action arising from negligence in the rendering of medical care, a presumption of negligence shall arise if the following foundation facts are first established:
>
> 1. The plaintiff sustained any injury;

> 2. Said injury was proximately caused by an instrumentality solely within the control of the defendant or defendants; and
>
> 3. Such injury does not ordinarily occur under the circumstances absent negligence on the part of the defendant.
>
> If any such fact, in the discretion of the court, requires a degree of knowledge or skill not possessed by the average person, then in that event such fact must be established by expert testimony.

76 *Okla. Stat.* § 21.

In *Smith v. Hines*, 261 P.3d 1129, 1136 (Okla. 2011), the Oklahoma Supreme Court noted that the Oklahoma statute (§ 21) codified the res ipsa loquitur evidentiary rule, the purpose of which "is to aid the plaintiff in making out a prima facie case of negligence in circumstances when direct proof of why the harm happened if beyond the power or knowledge of the plaintiff." To establish a prima facie case for res ipsa application, the plaintiff must show: "1) [plaintiff's] injury . . . does not usually occur during the course of [the allegedly negligent] surgery; 2) the surgeon had exclusive control and management of the instrumentality that caused the injury; 3) evidence shedding light on the harmful event is more accessible to the surgeon than the patient; and 4) the injurious event is the sort of occurrence which, in the ordinary course of events, would not have happened if one having control of the instrumentality exercised due care." 261 P.3d at 1136. The court in Smith concluded that the trial court erroneously granted summary judgment to the defendant on the res ipsa loquitur issue, because the evidentiary materials presented issues of fact from which reasonable persons might reach different conclusions. *Id.* at 1136-37. In arriving at that conclusion, the court noted its prior decisions that "[w]here the proof is conflicting or subject to different inferences, some of which are in favor of and others against the

applicability of res ipsa loquitur, the question must be left to the jury." *Id.* at 1137 (quoting *Deweese v. Patterson UTI Drilling Co.*, 229 P.3d 540 (Okla. 2010)).

While the test clearly turns on specific facts, defendants' Motion and opening brief did not contain any factual statement with respect to these issues. In contrast, plaintiff has submitted testimony from her medical expert that flat back syndrome only "rarely" occurs in the absence of negligence (Doc. 103-1 at 2 of 52 at lines 17-24). Ms. Barton's medical expert's written expert report further notes his opinion that her flat back syndrome was "a result of the surgery performed by Dr. Tomecek." (Doc. 103-1 at 11 of 53). While his opinion and testimony do not exclude every other possible cause for the flat back syndrome, it certainly presents an issue of fact regarding whether such "injury does not ordinarily occur under the circumstances absent negligence." See Smith, 261 P.3d at 1136 (emphasis added).

In the reply brief, defendants expand their res ipsa loquitur argument and cited cases and argument not provided in their opening brief, whereas their initial argument was three sentences long and was based solely upon Judge Eagan's statement regarding res ipsa loquitur as a separate claim. (See Doc. 95 at 7). In the reply, defendants essentially ask for a summary judgment precluding Ms. Barton from attempting to present a res ipsa loquitur theory to the jury. The Court is not persuaded by the defendants' argument. Defendants' proposed construction of § 21 would require that Ms. Barton prove that her type of injury never occurs in the absence of negligence, but the statute and applicable law expressly require only that the injury ordinarily does not occur absent negligence. See 76 *Okla. Stat.* § 21. Like the plaintiff in Smith, Ms. Barton has presented enough evidence to preclude summary judgment on her allegation of res ipsa loquitur.

### C.  *Failure to Obtain Informed Consent*

The bulk of defendants' argument regarding informed consent is based upon a prior claim asserted by Ms. Barton in the original Complaint, wherein she asserted in part that she was not adequately informed of Dr. Tomecek's investment interest in the Tulsa Spine and Specialty Hospital. That claim has been eliminated in the Amended Complaint, and the Motion is thus moot on that issue. In her Fourth Claim in the Amended Complaint, Ms. Barton now alleges that the defendants failed to inform her that Dr. Tomecek was performing an unnecessarily large spinal surgery that was not warranted and failed to obtain her informed consent to the surgery performed. (Doc. 122 at 9).

With respect to the remaining informed consent allegations stated in the Amended Complaint, defendants argue that plaintiff signed a consent form "that detailed her procedure and stated 'my physician has informed me of all known risks.'" (Doc. 128 at 5). However, the plaintiff alleged (and provided testimony consistent with such allegations) that any such consent was not informed or valid because Dr. Tomecek did not fully and adequately explain the risks and the surgery he would perform. (Doc. 103 at 10-12). The defendants' reliance upon the statement in the form (that "my physician has informed me of all known risks") presumes that the plaintiff knew, at the time she signed the form, of "all . . . risks" that were "known" to Dr. Tomecek, regardless of whether such risks were identified on the form. Plaintiff's contention that she was not informed of specific risks, such as flat back syndrome, creates a genuine issue of material fact for the jury on whether Dr. Tomecek satisfied his duty "to disclose . . . all relevant information to enable [her] to make an informed decision on whether to consent to or reject the physician's proposed treatment or surgery." See OUJI-Civil No. 14.11. Accordingly, summary judgment on the issue of informed consent is inappropriate.

### D.     *Punitive Damages*

Defendants argue that the Court "should find as a matter of law that Plaintiff cannot seek summary judgment" because "[n]one of Plaintiff's deposed witnesses have opined Dr. Tomecek acted intentionally or recklessly in performing the surgery." (Doc. 95 at 10). Under Oklahoma law, the jury may award punitive damages after finding, by clear and convincing evidence, that a defendant acted in reckless disregard for the rights of others. 23 *Okla. Stat.* § 9.1(B). Plaintiff responds by citing testimony of her expert witness and her treating physician that the surgery performed by Dr. Tomecek was unnecessary, and the opinion of an examining neurosurgeon that, out of 27,000 patients he has seen, hers is the "most unfortunate" elective spinal case, "her life is truly ruined," her "post-operative result is horrific." (Doc. 103 at 14-15). The Court concludes that there is enough evidence, based upon plaintiff's allegations of grossly negligent conduct and unnecessary surgery, to preclude summary judgment on the issue of punitive damages at this time. If the evidence at trial does not ultimately support submission of punitive damages to the jury, the Court will consider any renewed arguments as to the same at that time.

**IV.     Conclusion**

There are a number of genuine issues of material fact precluding summary judgment.

IT IS THEREFORE ORDERED that the defendants' Motion for partial summary judgment (Doc. 95) is hereby denied.

SO ORDERED this 26th day of August, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE